UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LISA CANDEE

    Plaintiff,

v.

AT&T WIRELESS MOBILITY LLC, CINGULAR WIRELESS EMPLOYEE SERVICES, LLC and DOES ONE through FIFTY, inclusive,

    Defendants.
_____/

No. C 08-04384 MHP

**MEMORANDUM & ORDER**

**Re: Defendant's Motion for Summary Judgment**

    Plaintiff Lisa Candee ("plaintiff") brings this action against her employer, AT&T Mobility LLC ("defendant" or "AT&T"), alleging discrimination and failure to reasonably accommodate her disabilities pursuant to the California Fair Employment and Housing Act ("FEHA"). On February 11, 2010, this court granted defendant's motion for partial summary judgment, holding that a mere inability to work with a single person cannot be a limitation capable of defining a disability under the FEHA. Now before the court is defendant's motion for summary judgment as to all of plaintiff's claims. Having considered the parties' arguments and submissions, the court enters the following memorandum and order dismissing with prejudice all of plaintiff's claims.

BACKGROUND

    Plaintiff was hired as a sales representative with Cellular One, a cellular telephone company, in 1991. Docket No. 73 (Candee Dec.) ¶ 2. She stayed with the company through acquisitions by

Cingular Wireless and AT&T Wireless. *Id.* Plaintiff worked for defendant or its predecessor entities until her termination on October 31, 2007. At the time of her termination, plaintiff held the position of Senior Government Account Executive, with responsibilities for selling wireless solutions and integrated vertical products to local government accounts. *Id.* ¶ 7.

In October 2004, Cingular Wireless merged with AT&T Wireless. *Id.* ¶ 21. The merger caused problems for customers and for the merged company's sales tracking systems. *Id.* ¶¶ 32-33. On October 21, 2005, plaintiff's supervisor, Eric Bentel, issued plaintiff a Written Counseling Notice, faulting her for not achieving her sales quota. *Id.*, Exh. 11 (Counseling Notice). Plaintiff responded to this notice by indicating that the sales numbers on which Bentel relied did not accurately describe her sales performance. Candee Dec. ¶ 35. At the time plaintiff received the notice, she was working sixty to ninety hours per week in an effort to both handle her sales responsibilities and provide responses to customer complaints following the merger. *Id.* ¶ 40. In August 2005, as a result of the long work hours, increased workload and stress, plaintiff began to have prolonged menstrual periods, heavy bleeding and cramping. *Id.* ¶ 41. She also experienced pain in her hands, shoulders, neck and arms, tearfulness and difficulty sleeping. *Id.* ¶ 42. Plaintiff reported these problems to her new supervisor, Kathy Carlson, who was functioning as the manager of plaintiff's team and who officially became plaintiff's supervisor in January 2006. *Id.* ¶¶ 44-45.

On or about February 14, 2006, plaintiff received her 2005 performance review. *Id.* ¶ 55. Although Carlson described plaintiff as intelligent and professional, plaintiff was faulted for not achieving all of her sales objectives for 2005. *See id.*, Exh. 17 (Employee Performance Review) at 3. In early March 2006, Carlson requested that plaintiff take responsibility for the sales territory of another employee while he was out on leave; plaintiff indicated that she was physically and mentally overwhelmed, and declined. *Id.* ¶ 58-59. On March 6, 2006, after plaintiff declined this offer, she received a poor monthly performance evaluation for being unresponsive to customer complaints and failing to meet sales quotas. *Id.*, Exh. 19 (March 6, 2006, Performance Evaluation). On May 16, 2006, Carlson announced to her sales team that plaintiff would be taking responsibility for the second sales territory notwithstanding plaintiff's prior refusal to accept the added responsibility. *Id.*

2

¶ 65, Exh. 22 (Email). On May 22, 2006, Carlson had a meeting with plaintiff in which Carlson presented plaintiff with a Final Written Warning indicating that plaintiff would be terminated if the performance goals outlined in the document were not met by June 19, 2006. *Id.* ¶ 66, Exh. 23 (Final Written Warning).

Shortly after receiving the final warning and in a state of extreme distress, plaintiff sought medical attention at the office of her doctor, Dr. Lisa Gervin. *Id.* ¶ 68. Because Dr. Gervin was out of the office at the time, plaintiff was examined by Dr. Gervin's associate, Dr. Sujansky, who initiated disability leave paperwork. *Id.* Plaintiff faxed this paperwork to AT&T, and Dr. Gervin subsequently referred plaintiff to counselor Paula Jo Husack. *Id.* Plaintiff began seeing Husack on May 24, 2006, as she continued to experience symptoms of distress including tearfulness, depression, trouble sleeping, loss of appetite, difficulty focusing and some memory lapses. *Id.* ¶ 69.

On June 8, 2006, plaintiff submitted to AT&T an "Attending Physician's Statement of Disability Form" completed by Dr. Gervin in which she described plaintiff's diagnosis as "left carpal tunnel syndrome," "situational depression" and "left arm and hand pain." *Id.* ¶ 70, Exh. 24 (Attending Physician's Statement of Disability). She furthered noted that plaintiff suffered from an "extremely depressed mood" and "tearfulness," and described plaintiff's condition as chronic and as requiring treatment in the form of a brace, continuous anti-inflammatories, rest and counseling. *Id.* ¶¶ 70-71. Moreover, Dr. Gervin diagnosed plaintiff as disabled from performing her job due to the fact that she was incapable of performing computer work, performing phone work and interacting with clients and colleagues. *Id*. ¶ 70. On or about June 8, 2006, plaintiff submitted a claim for disability insurance benefits which she was subsequently awarded. *Id. ¶* 71, Exh. 25 (Claim for Disability Insurance Benefits and Doctor's Certificate).

Plaintiff remained on disability leave for exactly twelve months, from May 22, 2006, until May 21, 2007. Candee Dec. ¶ 85. During this time period plaintiff pursued a workers' compensation claim against defendant. *Id.* ¶ 77. A workers' compensation appeals judge later concluded that plaintiff had sustained a compensable injury to her left upper extremity, cervical spine and psyche arising out of and occurring in the course of employment. *Id*. ¶ 81, Exh. 29 (Workers' Compensation

3

Findings and Award).  As part of the workers' compensation case, plaintiff saw an orthopedic specialist, Dr. Leslie Kim, for her physical injuries and attended psychological counseling with Husack from May 24, 2006 through March 8, 2007. *Id.* ¶ 76.  She also made a single visit to Dr. Miles Weber, the psychiatric Agreed Medical Evaluator ("AME") in the workers' compensation case. *Id.* ¶ 77, Exh. 27 (Agreed Medical Evaluator Report ("AME Report")).  Weber diagnosed plaintiff as suffering from an "Adjustment Disorder with Anxiety and Mood Disturbance, Chronic Type."  AME Report at 15.  In a comprehensive medical report, Weber described plaintiff's psychiatric symptoms as including "recurrent sadness, episodic insomnia, ruminating worry and sad thoughts." *Id.*  Weber indicated that plaintiff "is able to return to her job if she is not supervised by Ms. Carlson and if [plaintiff] does not work more than ten hour days, five days a week." *Id.* at 16.

On May 21, 2007, Dr. Kim released plaintiff to return to work with certain limited physical restrictions including restrictions on sitting, keyboarding and lifting, as well as a restriction on the number of hours she could work each week. *Id.*, Exh. 33 (Treating Physician Return to Work Form) at 2.  Kim limited plaintiff to no more than five ten-hour work days per week, but did not specifically indicate any limitations stemming from plaintiff's psychiatric injuries in the release. *Id.* However, he did incorporate Weber's psychiatric AME evaluation by checking the box for "previously determined & reported" with respect to plaintiff's Permanent and Stationary Status in the Return to Work release and by making the notation "per AME." *Id.*

The same day Dr. Kim completed the Return to Work form, plaintiff emailed Susan Horcharik, the human resources manager then assigned to defendant's Government Accounts Group, and informed Horcharik she was ready to return to work immediately. *Id.* ¶ 88, Exh. 34 (Email).  In her email, plaintiff indicated that she "would not be going back to the same supervisor," Kathy Carlson. *Id.*  Horcharik sent three emails in response.  In her first email, Horcharik instructed plaintiff to contact Carlson. *Id.*  In her second email, Horcharik stated that she had spoken to Candee's adjustor, Patrick Lott, who advised her that plaintiff could not return to work based on plaintiff's work restrictions and instructed Horcharik to tell plaintiff that she or her attorney should contact Lott with any questions. *Id.*, Ex. 35 (Email).  The second email also stated that Horcharik

4

would not "correspond with [plaintiff] any further on this topic." *Id.* ¶ 89. Horcharik then sent a third email in which she reiterated that plaintiff would not be returning to work and that Horcharik would not correspond with plaintiff any further. *Id.* ¶ 90, Ex. 36 (Email). After unsuccessfully trying to contact Mr. Lott, plaintiff's attorney, Susan Bluer, emailed Horcharik, warning that the company's actions could give rise to liability for failure to engage in the interactive process and failure to provide a reasonable accommodation. *See* Docket No. 71 (Plaintiff's Opposition Memorandum ("Opposition")) at 7. Horcharik replied, referring Bluer to Lott. *Id.* at 8.

On June 22, 2007, after further communications among plaintiff, defendant and the adjuster, plaintiff submitted a Cingular Wireless ADA Medical Evaluation Package completed by her orthopedist, Dr. Kim, to Stephen Schiavone, the AT&T Return to Work Manager assigned to plaintiff. *Id.* ¶ 91, Exh. 37. Kim noted the same restrictions upon plaintiff's return to work that he had previously noted in his May 21, 2007 Return to Work release form. *Id.* On July 17, 2007, Schiavone and Horcharik had a telephone conference with plaintiff in which they informed her that AT&T could accommodate all of her requested physical restrictions as identified in the ADA paperwork, and that she must return to her prior job. *Id.* ¶ 95. AT&T did not offer any stress-related accommodations at that time. During the conference call, plaintiff reiterated that per Weber's orders, as expressed in the AME Report, she was not allowed to report to Carlson. *Id.*

Defendant subsequently placed plaintiff on a paid job search from approximately mid-July until mid-August 2007, during which time plaintiff applied unsuccessfully for several open positions within the company. *Id.* ¶¶ 98-104. After that time, plaintiff was placed on an unpaid job search, which came to an end on September 21, 2007. *Id.* ¶ 108. In early October, defendant informed plaintiff via email that defendant could not hold her current position open any longer. *Id.* ¶ 109, Exh. 40 (Email). Defendant alleged that there were no open Government Account Executive positions in California and consequently provided plaintiff with two options: (1) return to work for Carlson, or (2) accept any one of eight open Government Account Executive positions available in different markets across the country. *Id.* ¶ 110, Exh. 43. Plaintiff rejected the offer, and on October 31, 2007,

5

defendant terminated plaintiff for failing to return from disability leave following her doctor's medical release. *Id.* ¶ 114.

Plaintiff filed this action on August 8, 2008 in the Superior Court of the State of California, County of Alameda, alleging seven causes of action: (1) breach of contract; (2) bad faith; (3) physical and mental disabilities discrimination and/or failure to accommodate in violation of the FEHA; (4) discharge in violation of public policy; (5) retaliation in violation of the FEHA; (6) discharge in violation of public policy; and (7) intentional infliction of emotional distress. Defendant removed the action to this court on September 18, 2008 and now moves for summary judgment as to all counts.

LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-55 (1986). A fact is "material" if it may affect the outcome of the proceedings, and an issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. The court may not make credibility determinations. *Id.* at 255. The moving party bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 250.

6

## DISCUSSION

### I.     Discrimination Claim

Plaintiff alleges that defendant discriminated against her on the basis of her physical and mental disabilities, in violation of the California Fair Employment and Housing Act (FEHA). Specifically, plaintiff alleges that defendant failed to provide reasonable accommodation in two ways: by refusing to accommodate the limitation on the number of work hours as prescribed by Dr. Kim and by requiring plaintiff to continue to work under the supervision of Kathy Carlson, in contravention of an accommodation prescribed by Dr. Weber.

Under the FEHA, "[i]n the context of disability discrimination, the plaintiff initially has the burden to establish a prima facie case of discrimination. The plaintiff can meet this burden by presenting evidence that demonstrates, even circumstantially or by inference, that he or she (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Sandell v. Taylor-Listug, Inc.*, 188 Cal.App.4th 297, 310 (2010) (citing *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 254 (2000)). "The prima facie burden is light; the evidence necessary to sustain the burden is minimal." *Id.* Moreover, "while the elements of a plaintiff's prima facie case can vary considerably, generally an employee need only offer sufficient circumstantial evidence to give rise to a reasonable inference of discrimination." *Id.*

Under the FEHA, being mentally disabled is defined as "having any mental or psychological disorder or condition, such as mental retardation, organic brain syndrome, emotional or mental illness, or specific learning disabilities, that limits a major life activity." Cal. Gov't Code § 12926(I). The legislative findings and declarations explain:

> The law of this state in the area of disabilities provides protections independent from those in the federal Americans with Disabilities Act of 1990 (Public Law 101-336). Although the federal act provides a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional protections . . . . In addition, the Legislature has determined that the definitions of "physical disability" and "mental disability" under the law of this state require a "limitation" upon a major life activity, but do not require, as does the Americans with Disabilities Act of 1990, a "substantial limitation." This distinction is intended to result in broader coverage

7

> under the law of this state than under that federal act. Under the law of this state, whether a condition limits a major life activity shall be determined without respect to any mitigating measures, unless the mitigating measure itself limits a major life activity, regardless of federal law under the Americans with Disabilities Act of 1990. Further, under the law of this state, "working" is a major life activity, regardless of whether the actual or perceived working limitation implicates a particular employment or a class or broad range of employments.

Cal. Gov't Code § 12926.1 (codifying part of the Prudence Kay Poppink Act). "A mental or psychological disorder or condition limits a major life activity if it makes the achievement of the major life activity difficult." Cal. Gov't Code § 12926(i)(1)(B); *see also Bryan v. United Parcel Serv.*, 307 F. Supp. 2d 1108, 1115 (N.D. Cal. 2004) (Alsup, J.)..

A.   Job Reassignment

Defendant moves for summary judgment as to plaintiff's claim that defendant failed to provide reasonable accommodation by refusing to permit her to return to her previous job under the supervision of someone other than her previous supervisor, Kathy Carlson. In her opposition memorandum, plaintiff clarifies her request for reasonable accommodation, contending that a different job placement altogether would have been an equally acceptable accommodation in addition to returning to her old job under new supervision. Opposition at 18. This court previously granted defendant's motion for partial summary judgment, holding that plaintiff's inability to work with her supervisor is insufficient to establish the requisite limitation on a major life activity of employment, even in light of the FEHA's broader definitions. Docket No. 59 (Memorandum & Order) at 9. Notwithstanding this holding, plaintiff argues that, "[r]eturning to work under Ms. Carlson would have required [plaintiff] to return to the scene of her psychic injury." Opposition at 18:13. Plaintiff's argument is unavailing, however, because as previously noted, defendant had no duty under the FEHA to provide the requested accommodation. Thus plaintiff is unable to establish a prima facie case of disability discrimination because she fails to meet the first prong of the standard.

The court reiterates that although plaintiff has been diagnosed with various mental disabilities that are cognizable under the FEHA,[1] plaintiff is not a person with a disability under the FEHA unless by virtue of her disability she is limited in a major life activity.[2] To the extent that

8

plaintiff relies on her inability to work under the supervision of Ms. Carlson as the limitation on the major life activity of working, her claim is insufficient, even in light of the FEHA's broader definitions. Accordingly, defendant's motion for summary judgment is GRANTED.

### B. Hours

Plaintiff alleges that defendant refused to provide reasonable accommodation in regard to the maximum number of hours that plaintiff could work each week. Plaintiff, however, does not provide evidence from which the trier of fact could infer that defendant did not meet this obligation. Plaintiff concedes that as an initial matter defendant agreed to the accommodation that plaintiff work no more than ten hours per day, five days per week as suggested by Dr. Kim. Plaintiff alleges, however, that defendant did not confirm with Ms. Carlson that as plaintiff's supervisor, she would so limit plaintiff's work week to no more than the prescribed hours. Plaintiff argues that because Ms. Carlson allegedly required plaintiff to work excessive hours prior to her disability leave, plaintiff could reasonably expect similar treatment upon her return. Opposition at 18:4-5. Apart from this bare speculation, however, plaintiff provides no evidence that defendant refused to meet this accommodation or that it was within Ms. Carlson's power as defendant's employee to ignore defendant's directive to provide plaintiff with this accommodation. As plaintiff never returned to work, plaintiff's fears remain unrealized, and alone do not provide a basis for the contention that AT&T did not honor the hourly accommodation as prescribed by her doctor. Because plaintiff has not identified any evidence presenting a genuine issue of material fact, summary judgment is GRANTED in favor of defendant.

## II. Interactive Process

Plaintiff alleges that defendant did not engage in the "interactive process" as mandated by Cal. Gov't Code § 12940(n).[3] "The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively." *Wilson v. County of Orange*, 169 Cal.App.4th 1185, 1195 (2009) (citing *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 261 (2000)). Whether an employer has engaged in the interactive process is generally a

9

question of fact. *Id.* at 1193 (citing *Raine v. City of Burbank*, 135 Cal.App.4th 1215, 1227 (2006)). Plaintiff alleges that defendant did not engage in the interactive process in good faith by failing to cooperate in plaintiff's search for an alternate position in the company and by failing to timely engage with plaintiff in the interactive process as an initial matter.

As discussed above, defendant had no obligation to provide reasonable accommodation in the form of alternative job placement. Accordingly, defendant is not liable for allegedly not engaging in the interactive process to the extent that plaintiff relies upon defendant's alleged bad faith in the job reassignment/placement process to underpin this claim.

Alternatively, plaintiff alleges that AT&T failed to engage in the interactive process until prompted by plaintiff's attorney. Plaintiff presents evidence that after this initial reluctance, however, defendant took several steps to provide accommodation for plaintiff, which ultimately culminated in defendant's offer to provide all of the accommodations recommended by plaintiff's physician, Dr. Kim. Accordingly, defendant's alleged initial delay in response to plaintiff's requests for reasonable accommodation appears to form the basis of plaintiff's claim. *Wilson v. County of Orange*, *supra*, is instructive here. In *Wilson*, an emergency communications system dispatcher brought an action against her employer alleging, inter alia, a failure to timely engage in the interactive process. *Wilson*, 169 Cal.App.4th 1185 (2009). After a jury trial, judgment was entered in favor of the defendant and plaintiff appealed. The California Court of Appeal held that despite plaintiff's argument that the defendant had taken too long to formally engage in the interactive process, informal process had been ongoing. *Id.* at 1195. Accordingly, because the record reflected that the defendant had been informally engaged with the plaintiff in the interactive process prior to the commencement of a formal process, and because the plaintiff ultimately "got exactly what she wanted-albeit after a series of temporary accommodations," the verdict in favor of defendant was affirmed. *Id.*

Here, there is some dispute whether and to what degree defendant engaged in the interactive process in good faith prior to the intervention of plaintiff's then-attorney. *See* Candee Dec. ¶ 84. Ultimately, however, defendant offered to provide plaintiff with all of the accommodations based on

10

her legally cognizable disabilities under the FEHA as identified by Dr. Kim. Plaintiff refused to return to work, nonetheless, because she also wanted the accommodation of not being supervised by Ms. Carlson or in the alternative returning to AT&T in a different position. As discussed above however, plaintiff's inability to work with her supervisor is insufficient to establish the requisite limitation on a major life activity of employment for the purposes of the FEHA. Moreover, plaintiff's evidence reflects that defendant took significant steps to assist plaintiff in returning to work with reasonable accommodations, including providing plaintiff with a back to work manager, and providing plaintiff with paid time in which to conduct a job search even though defendant had no duty to accommodate plaintiff in this manner. *Id.* ¶ 91.

In sum, defendant offered to reasonably accommodate plaintiff for her legally cognizable disabilities, yet plaintiff declined to accept these accommodations. *See Wilson*, 169 Cal.App.4th at 1195 (citing *Hanson v. Lucky Stores, Inc.*, 74 Cal.App.4th 215, 299 (1999)) (An "employer cannot be held liable for failing to engage in the interactive process when the employee was in fact offered reasonable accommodation.") Accordingly, summary judgment is GRANTED in favor of defendant.

III.  Public Policy Violations

Plaintiff alleges that defendant engaged in disability discrimination and wrongful discharge in violation of public policy. The court addresses each in turn.

"A prima facie case for discrimination on grounds of physical disability under the FEHA requires plaintiff to show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." *Deschene v. Pinole Point Steel Co.*, 76 Cal.App.4th 33, 44 (1999). Plaintiff alleges that defendant discriminated against her because of her mental disability. Namely, plaintiff asks the court to deny defendant's motion for summary judgment on the basis that the evidence supports an inference that in failing to place plaintiff in an alternate job environment in which she no longer worked under the supervision of Kathy Carlson, and in subsequently terminating plaintiff after she refused to return to work under these circumstances, defendant discriminated against plaintiff based on her mental disability.

11

Plaintiff contends that defendant "chose to terminate [plaintiff] rather than accommodate her disability by reassigning her to a vacant position." Opposition at 21:12-13. As previously stated, however, defendant had no such duty, and offered plaintiff every legitimate, reasonable accommodation that plaintiff otherwise requested via Dr. Kim's recommendations. It was plaintiff's prerogative to refuse these accommodations. Plaintiff's reference to her alleged qualification for other jobs she sought within AT&T is inapposite given these circumstances. Indeed, to the extent that plaintiff relies yet again on her inability to work under the supervision of Ms. Carlson to undergird her claim here, plaintiff is unable to establish a prima facie case of discrimination because her inability to work with her supervisor is insufficient to establish the requisite limitation on the major life activity of working. Accordingly, summary judgment is GRANTED in favor of defendant.

"California courts have long recognized a cause of action sounding in tort for wrongful discharge in violation of public policy. . .but has limited it to include only those claims of wrongful discharge which allegedly violate a fundamental public policy embodied in constitutional or statutory provisions." *Kelecheva v. Multivision Cable T.V. Corp.*, 18 Cal.App.4th 521, 527 (1993) (internal citations omitted). Plaintiff argues that she was wrongfully terminated by AT&T for refusing to return to work under the supervision of Ms. Carlson. Plaintiff contends that her disability, namely her inability to engage in work under the supervision of Ms. Carlson, was "a motivating factor in AT&T's decision to terminate her." Opposition at 21:14-15. In advancing this argument, plaintiff once again failed to heed the court's previous holding that her inability to return to work under a specific supervisor is not a cognizable disability under the FEHA. Moreover, plaintiff's evidence reveals that she was terminated after refusing to return to work although AT&T offered to provide her with all of the reasonable accommodations, prescribed by her doctor, that related to her legally cognizable disability claims. Accordingly, summary judgment is GRANTED in favor of defendant.

IV. <u>Retaliation Claim</u>

12

1    Plaintiff argues that defendant retaliated against her for taking disability leave and
2 subsequently invoking the right to reasonable accommodation upon her attempts to return to work.
3 Plaintiff contends that defendant retaliated by purposefully denying plaintiff various open positions
4 within the company that would have facilitated her return to work in the Bay Area without having to
5 work for Ms. Carlson.  To establish a prima facie case of retaliation under the FEHA, plaintiff must
6 "show that (1) she engaged in a protected activity, (2) [defendant] subjected her to an adverse
7 employment action, and (3) there was a causal link between the two." *Nadaf-Rahrov v. Neiman*
8 *Marcus Group, Inc.*, 166 Cal.App.4th 952, 989 (2008) (citing *Yanowitz v. L'Oreal USA, Inc.*, 36
9 Cal.4th 1028, 1042 (2005)).  Upon establishing a prima facie case of retaliation, the burden shifts to
10 the defendant to show a legitimate, nondiscriminatory reason for the adverse action. *Id.*  Upon
11 making such a showing, the burden shifts back to the plaintiff to establish intentional retaliation. *Id.*

12    In its Motion, defendant argues that plaintiff has failed to adduce evidence supporting an
13 inference of a causal link between plaintiff's disability leave, subsequent attempt to return to her job
14 with reasonable accommodation and her termination in October of 2007.  Plaintiff contends that in
15 her quest to return to a less stressful work environment at AT&T, she applied for several allegedly
16 available positions within the company in the Bay Area.  Plaintiff was unsuccessful in these
17 attempts, and prior to her termination, defendant gave her the option of returning to her previous job
18 with reasonable accommodations or taking any one of eight available positions in various markets
19 across the country.  Plaintiff argues that defendant, in retaliation, worked to screen out and prevent
20 plaintiff from being considered for or offered any of the allegedly available positions in the Bay
21 Area to which she applied.

22    Plaintiff fails to present evidence supporting an inference that there was a causal link
23 between her disability leave and subsequent request for reasonable accommodation and her inability
24 to find another position within the company.[4]  Plaintiff offers evidence that at least one of the hiring
25 managers for a Global Account Executive position in the Bay Area was aware that plaintiff had
26 taken a disability leave, docket No. 72 (Smallets Dec.), Exh. P. (Heller Depo.) 27:18-24,[5] yet she
27 proffers nothing to link this knowledge with any of AT&T's hiring managers' hiring decisions with

13

1 respect to plaintiff. The fact that one hiring manager was aware that plaintiff had taken disability
2 leave by itself does not support an inference that the hiring managers who considered plaintiff for
3 various jobs declined to hire her in retaliation. In addition, plaintiff proffers evidence that she was
4 qualified for a number of jobs that she was ultimately unsuccessful in getting. Plaintiff, however,
5 fails to provide evidence that links her lack of success, qualifications notwithstanding, to defendant's
6 alleged retaliatory intent, and without more, this evidence does not support an inference that her lack
7 of success was in fact due to retaliation. Thus, plaintiff's evidence presents no genuine issue of
8 material fact, and summary judgment as to plaintiff's claim of retaliation is GRANTED in favor of
9 defendant.

## V. Emotional Distress Claim

Plaintiff bases her claim for intentional infliction of emotional distress on defendant's alleged acts of retaliation, disability discrimination, failure to engage in the interactive process, failure to provide reasonable accommodation and wrongful termination.

> "The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. Resolution of this matter turns on the first element-whether or not the conduct alleged was sufficiently extreme and outrageous." *Cochran v. Cochran*, 65 Cal.App.4th 488, 494 (1998).

Plaintiff does not point to any instances in the record that support an inference of extreme or outrageous behavior on the part of defendant or its agents. Accordingly, given the court's conclusions above as to plaintiff's various claims, summary judgment in GRANTED in favor of the defendant.

## VI. Breach of Contract/Bad Faith

### A. Breach of Contract

Plaintiff raises claims of breach of contract and bad faith. She alleges that there was an implied-in-fact employment contract between herself and AT&T which prohibited AT&T from firing her without cause while her work was satisfactory. According to plaintiff, AT&T breached this

14

contract by firing her without cause. Plaintiff further alleges that defendant discharged her in bad faith by firing her without cause after conspiring to make it seem as though plaintiff deserved to be fired for cause.

"Labor Code section 2922 provides that '[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other.' An at-will employment may be ended by either party 'at any time without cause,' for any or no reason, and subject to no procedure except the statutory requirement of notice." *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 335 (2000) (citing Cal. Labor Code § 2922). "The statute does not prevent the parties from agreeing to any limitation, otherwise lawful, on the employer's termination rights." *Id.* at 336. "Thus, the employer and employee may enter an agreement . . . that . . . the employment relationship will continue indefinitely, pending the occurrence of some event such as the employer's dissatisfaction with the employee's services or the existence of some 'cause' for termination." *Id.* (citing *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 680 (1988) (internal quotation marks omitted)). "The contractual understanding need not be express, but may be implied in fact, arising from the parties' conduct evidencing their actual mutual intent to create such enforceable limitations." *Id.*

Determining whether there is an implied-in-fact employment contract is a fact-specific inquiry and "the nature of the . . . contract must be determined from the totality of the circumstances." *Id.* at 366 (citing *Foley*, 47 Cal.3d at 681) (internal citation and quotations marks omitted)). Factors that are relevant in determining the existence of an implied-in-fact employment contract include, "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Foley*, 47 Cal.3d at 680 (quoting *Pugh v. See's Candies, Inc.*,116 Cal.App.3d 311, 327 (1981)).

Based on these factors, defendant argues that "the undisputed facts show that [plaintiff's employment agreement with AT&T was at-will." Docket No. 61 (Defendant's Motion for Summary Judgment) at 7. Plaintiff's evidence suggests a different account as to the nature of the facts and the understanding of the parties. *See e.g.*, Candee Dec. ¶¶ 2-4 (providing evidence of plaintiff's longevity

of employment and evidence of actions or communications by AT&T reflecting assurances of continued employment); Candee Dec., Exh. 43 (Email from Susan Horcharik stating, "Since you are still on PIP, this may lead to termination for cause.") Defendant counters with evidence that plaintiff understood throughout the course of her sixteen years with AT&T that her employment with AT&T was at-will. Docket No. 61-2 (Declaration of Amanda Bruss) Exh. B (Candee Depo. Vol. 1) 227:3-5, 19-25. Thus, there is a genuine dispute of material fact whether there was an implied-in-fact employment contract between plaintiff and defendant that provided for termination for cause.

Even if the trier of fact concluded that an implied-in-fact employment contract existed between plaintiff and defendant, however, plaintiff has failed to proffer evidence that she was not terminated for cause. Defendant offered to provide plaintiff with reasonable accommodation with respect to plaintiff's legally cognizable disabilities. Plaintiff declined to accept these accommodations because she sought to return to work under alternate supervision. As discussed above, defendant had no legal obligation to provide this accommodation sought by plaintiff. Accordingly, when plaintiff refused to return to work notwithstanding defendant's offer to provide reasonable accommodation, defendant terminated her employment. Because the court concludes that plaintiff's evidence does not support an inference that she was not fired for cause, summary judgment is GRANTED in favor of defendant.

B.  Bad Faith

Plaintiff alleges that AT&T acted in bad faith and breached the covenant of good faith and fair dealing by terminating the plaintiff's employment without cause, yet orchestrating the circumstances surrounding her termination to create the false perception that her termination had been for cause. "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz*, 24 Cal.4th at 349. "It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* at 349-50. "Because the employment relationship is fundamentally contractual, limitations on . . . employer prerogatives are a matter of the parties' specific agreement, express or implied in fact." *Id.*

1 at 350. (internal citation and quotation marks omitted)).  As stated above, plaintiff's evidence does

2 not support an inference that she was not terminated for cause.  Nor does it support an inference that

3 defendant acted in bad faith.  Accordingly, summary judgment is GRANTED in favor of defendant.

4 VII.    <u>Plaintiff's Motion to Strike</u>

5         Lastly, plaintiff brings a Motion to Strike the Declaration of Kyann C. Kalin ("Declaration"),

6 submitted in reply to plaintiff's Opposition to defendant's Motion.  Plaintiff argues that the

7 Declaration contains evidence that defendant is submitting to the court for the first time in reply.  The

8 Declaration consists of thirteen exhibits, Exhibits A-M.  With regard to Exhibits A, J, K and L,

9 plaintiff's motion is DENIED as MOOT as the court did not rely on this evidence in reaching its

10 conclusions.[6]  The remaining exhibits consist of excerpts from deposition testimony taken long before

11 the commencement of the instant motion.  Thus, plaintiff's characterization of defendant's evidence

12 as "new" is misleading, but rather the proffered evidence is more aptly described as "newly cited by

13 [d]efendant AT&T on reply."  Docket No. 85 (Plaintiff's Motion to Strike).

14         Plaintiff cites *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 894-95 (1990) for the proposition

15 that a party may not introduce new evidence in reply.  In *Lujan*, the evidence at issue were affidavits

16 submitted for the first time on reply in a motion for summary judgment.  Respondent submitted

17 affidavits along with its reply papers instead of filing the affidavits in accordance with the district

18 court's rules which required such affidavits to be filed no later than one day before the hearing.  *Id.* at

19 895.  Accordingly, the petitioner had no opportunity to review and respond to the new evidence.  As a

20 result, the district court "rejected the additional affidavits as untimely and in violation of the court's

21 briefing Order."  *Id.* (internal punctuation, quotation marks and citations omitted.)  The Court

22 affirmed the district court, ruling that the submissions were "untimely."

23         The facts here are readily distinguishable from those in *Lujan*.  Here, the "new" evidence in

24 question was not so new to the plaintiff.  The remaining exhibits that plaintiff seeks to strike are all

25 taken from deposition testimony, to which plaintiff had access prior to the filing of this motion.

26 Accordingly, plaintiff's argument that this so-called "newly submitted" evidence is "unfair, as

27 [p]laintiff [did] not have the opportunity to respond to such evidence" is unavailing.  Indeed, the

28

17

plaintiff does not point to case law that would support her contention that, for example, defendant's reference to another portion of the very same deposition testimony of AT&T manager Edward Heller that plaintiff herself relies upon in making her argument should be stricken because plaintiff has not had an opportunity to respond. As discussed above, plaintiff has failed to proffer the requisite evidence required to survive defendant's motion. Accordingly, plaintiff's motion to strike is DENIED.

CONCLUSION

Defendant's motion for summary judgment is GRANTED *in toto*, plaintiff's motion to strike is DENIED and plaintiff's action is DISMISSED with prejudice.

IT IS SO ORDERED.

Dated:  December 1, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

18

**ENDNOTES**

1. For example, depression is a cognizable disability under FEHA. *See Auburn Woods I Homeowners Ass'n v. Fair Employment and Housing Com'n*, 121 Cal.App.4th 1578, 1592-1593 (2004) (citing *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245, 258-259 (2000) ("Numerous cases under state and federal law have held that depression and its related manifestations can meet the definition of disability under antidiscrimination laws.")). Plaintiff proffers evidence that she provided AT&T with evidence of her mental diagnoses, including depression, and AT&T officials acknowledge that the company was aware, prior to her termination, that plaintiff had documented various mental as well as physical disagnoses.

2. Working is cognizable as a major life activity for the purposes of the FEHA. Cal. Gov't Code § 12926.1.

3. Cal. Gov't Code § 12940 (n) provides:

It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

> For an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition.

4. In coming to its conclusion, the court was mindful of the difficulties associated with raising direct evidence of discriminatory intent. *See Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal.App.4th 952, 992 (2008) (permitting plaintiff to base a claim of discriminatory intent on indirect evidence.)

5. Defendant, however, presents contradictory evidence that at least one other hiring manager was not aware that plaintiff had been on disability leave and was seeking to return to work with reasonable accommodations. Docket No. 83 (Kalin Dec.), Exh. C (Boston Depo.) 30:4-22.

6. For the same reasons, the court also denies as moot plaintiff's request that all references to the Declaration of Lori Resnick in defendant's reply be disregarded.